The STATE of Ohio, Appellee,

v.

BARKER, Appellant.

[Cite as *State v. Barker* (1998), 128 Ohio App.3d 233.]

Court of Appeals of Ohio,
Sixth District, Fulton County.

No. F–97–025.

Decided June 5, 1998.

236

*Colin J. McQuade,* for appellee.

*Ronnie L. Wingate,* for appellant.

---

HANDWORK, Presiding Judge.

This is an appeal from judgment entries of the Fulton County Court, Eastern Division, in which the court (1) accepted jury verdicts finding appellant, Mary

Barker, guilty of one count of resisting a lawful arrest,[1] guilty of six counts of cruelty to animals,[2] guilty of one count of failure to file an income tax return with the village of Swanton,[3] and guilty of two counts of petty theft, and (2) sentenced appellant for those crimes. Appellant has presented nine assignments of error for consideration on appeal, which read:

"I. Appellant Barker was not guilty of resisting arrest because her arrest for obstruction was unlawful, and she did not resist the arrest recklessly or by force.

"II. Finding appellant guilty of cruelty to animals was against the manifest weight of the evidence.

"III. Appellant Barker was not guilty of theft in case No.: CRB 00046–1.

"IV. Appellant Barker was not guilty of theft in case No.: CRB 00046–2.

"V. The instructions to the jury were vague and confusing, and violated appellant's due process rights.

"VI. Appellant Barker was not guilty of the city income tax charge.

"VII. Appellant cannot be ordered to serve time in jail.

"VIII. The sentence of the trial court was an abuse of discretion.

"IX. The trial court abused its discretion and violated the appellant's right to due process of law, pursuant to the Constitutions of the United States of America and state of Ohio."

Before we address the arguments presented by the parties relating to the various assignments of error, we will briefly review the facts in this case.

The record shows that appellant and her companion, Jose Vasquez, bred and sold dogs from their home in Swanton, Ohio. They kept a sign in their front yard that read, "Joe and Mary's Petland." In response to several complaints from persons who were on the premises and who had purchased dogs from appellant, a patrolman from the village of Swanton Police Department applied for and received a search warrant to search appellant's business. He took the warrant to appellant's home on December 11, 1996 at 11:00 a.m. He was accompanied by an agent from the humane society for Fulton County, the chief dog warden for Lucas County, the Fulton County dog warden, and a deputy dog warden for Lucas County. The agent for the humane society for Fulton County determined

---

1. Appellant was charged with resisting a lawful arrest in violation of R.C. 2921.33(A).

2. The charges for cruelty to animals were filed pursuant to R.C. 959.13.

3. The charge for failure to file a local income tax return was filed pursuant to Section 35.15(A)(2) of the Codified Ordinances of the Village of Swanton.

that the dogs had to be seized for medical treatment because the conditions under which they were being kept constituted cruelty or neglect.

Appellant and her companion were disturbed from their sleep when the officers entered their home. When the officers decided to seize the animals from the business, appellant, still dressed in a nightgown, stepped in front of a closet where three kennels containing dogs and puppies were stacked behind closed doors and made a statement that the officers could not take her dogs. The patrolman then told her he was placing her under arrest for obstructing official business. Appellant refused to place her hands behind her back. She bent her wrists and tucked her hands in front of her instead. Two officer had to take her hands and place them behind her back in order to handcuff her.

Appellant was then placed in a patrol car. The officers seized all of the dogs that were inside the home and all of the dogs that were kept in the back yard of appellant's home. The dogs were assessed by a veterinarian. Many were underweight, had worms, and were badly matted. Many were covered in their own urine and fecal matter from their kennels.

Numerous charges were filed against appellant. She entered not guilty pleas to each of the charges and demanded a jury trial. As we previously noted, the jury did find appellant guilty on some of the charges, and the trial court accepted the jury verdicts and sentenced appellant for the crimes of which she was convicted. We now turn to the first assignment of error.

In support of her first assignment of error, appellant argues that the state did not prove all of the essential elements of the crime of resisting arrest. First, she argues that the essential element of a lawful arrest was not shown. She points out that the jury found her not guilty of the charge that was the basis of her arrest—obstructing official business.

Second, she argues that even if her arrest was lawful, she did not commit an essential element of the crime—she did not use physical force to resist arrest. She says that the facts in this case show that she only refused to put her hands behind her back and went limp when the police officers who were in her home to conduct a search told her that she was under arrest.

Appellee, the village of Swanton/state of Ohio, argues that all of the essential elements of the crime of resisting a lawful arrest were proved beyond a reasonable doubt in this case. Appellee agrees with appellant's statements that she only refused to put her hands behind her back and went limp, but states that passive physical resistance to a lawful arrest is still a violation of the law.

R.C. 2921.33(A) provides:

"(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

Ohio courts have consistently held that one of the required elements of this crime is a lawful arrest. *State v. Hendren* (1996), 110 Ohio App.3d 496, 498, 674 N.E.2d 774, 775–776. Ohio courts have also consistently held that an arrest is lawful if the officer had probable cause to believe that a crime was committed by the defendant, even if the defendant is ultimately found not guilty of the crime. *N. Ridgeville v. Reichbaum* (1996), 112 Ohio App.3d 79, 85, 677 N.E.2d 1245, 1248–1249; *Findlay v. Jackson* (Aug. 24, 1993), Hancock App. No. 5–93–7, unreported, 1993 WL 323736.

The officer in this case testified that he placed appellant under arrest for obstructing official business, a violation of R.C. 2921.31(A). R.C. 2921.31(A) provides:

"(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

The officer testified that he had a warrant to search appellant's business for proof of cruelty to animals. When the agent for the humane society assessed the situation at appellant's home, he determined that the dogs had to be seized and removed for medical treatment. The officer told appellant that they had to seize the dogs, and appellant moved to block the entrance to the closet where some dogs were kept in kennels. She made a statement that the officers could not take the dogs. Her actions constituted probable cause that she had the purpose to prevent, obstruct, or delay the performance of the lawful duty of the officer to carry out the search warrant and to seize the dogs. Accordingly, the facts in this case show that the essential element of a lawful arrest did exist for the charge of resisting a lawful arrest.

As to appellant's second argument that some physical resistance is required as an element to the crime of resisting a lawful arrest, we refer to the Legislative Service Commission Comment accompanying R.C. 2921.33(A), which reads:

"This section covers resistance or interference with an arrest not only by the person being arrested but by another as well. The offense may be committed through the use of force, or recklessly by any means, such as 'going limp.'" See, also, *State v. Keegan* (1990), 67 Ohio App.3d 824, 827, 588 N.E.2d 928, 929–930 (going limp sufficient to show resistance of lawful arrest).

Appellee presented proof of each of the essential elements of resisting arrest in this case. Appellant's first assignment of error is not well taken.

In support of her second assignment of error, appellant argues that her convictions for cruelty to animals were against the manifest weight of the evidence.[4] The Supreme Court of Ohio has said:

"Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * * Black's, *supra*, at 1594.

"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." (Emphasis deleted.) *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547.

Further, the Supreme Court of Ohio has said that the jury at trial, not an appellate court, has the function of deciding which witnesses are credible. *State v. Kehn* (1977), 50 Ohio St.2d 11, 14, 4 O.O.3d 74, 75, 361 N.E.2d 1330, 1332–1333. Keeping these standards in mind, we now consider the manifest-weight arguments presented by appellant.

■ Appellant first argues that she should not have been convicted for cruelty to animals in regard to a German shepherd, which the officers testified was chained to a tree in the back yard. The dog was in mud three inches deep, had no access to food or water, and could only get his head into the "igloo" that was provided for his shelter because his chain was wrapped around the tree several times, making the chain too short for him to enter his shelter. Even if he could have entered the shelter, the floor in the shelter was wet. The officer who seized

---

4. The charges for animal cruelty were filed pursuant to R.C. 959.13(A)(2) and (4), which provide:

"(A) No person shall:
" * * *

"(2) Impound or confine an animal without affording it, during such confinement, access to shelter from wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the animals would otherwise become sick or in some other way suffer. Division (A)(2) of this section dies not apply to animals impounded or confined prior to slaughter. For the purpose of this section, shelter means a man-made enclosure, windbreak, sunshade, or natural windbreak or sunshade that is developed from the earth's contour, tree development, or vegetation[;]
" * * *

"(4) Keep animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure without wholesome exercise and change of air, nor * * * feed cows on food that produces impure or unwholesome milk."

the dog said that the shelter would have sunk into the mud from the dog's weight if the dog had entered the shelter to lie down.

Appellant states that she took care of the animals inside the house, and the animals outside the house were the responsibility of Jose Vasquez. She therefore argues that she should not be held responsible for cruelty to any animal that was not inside the house.

In addition, she argues that even if she can be held accountable for the animals outside the house, appellee did not show that the circumstances appellee described with regard to the German shepherd were ongoing. She states that she should not be held responsible for an isolated incident where the dog wrapped its chain around the tree, making it impossible for him to reach shelter. She states that the testimony from one of appellee's witnesses showed that the witness saw the German shepherd "on a different date" and "she did not see anything unusual and that the dog appeared happy."

We have reviewed the entire trial transcript. While we note that some witnesses did indicate that Jose Vasquez generally took care of the dogs in the back yard, we are not convinced that this information absolves appellant of all responsibility for the dogs that were not inside the house. Testimony shows that appellant and Jose Vasquez operated a business in which they bred and sold dogs. The testimony shows that appellant showed and sold customers dogs that were kept in the back yard. As a joint operator of the business, appellant had a responsibility to ensure that none of the animals was subject to cruelty.

We are also unpersuaded that the circumstances described by the officers who seized the German shepherd from the back yard were the result of an isolated incident. We reviewed the testimony appellant cited in her brief and find nothing in the witness's testimony to support the statement that the dog appeared "happy." The witness stated that the dog was tied to a tree when she saw him. She was shown pictures taken on the date the dog was seized. She said the area was muddy when she saw the dog but not as muddy as it appeared in the pictures. She also said that she did not see any type of doghouse when she saw the dog, although one might have been there that she just did not notice.

The testimony in the transcript, taken as a whole, shows that the dog was always seen chained to the tree, in varying degrees of mud, without access to food and water and without shelter. We cannot conclude, after carefully reviewing the record, that the jury lost its way when it decided that the more credible evidence showed that appellant was responsible for animal cruelty with regard to the German shepherd that was seized from the back yard. We therefore do not find that her conviction on this charge was against the manifest weight of the evidence.

Appellant also argues that her convictions on four more charges of animal cruelty were against the manifest weight of the evidence. The record shows that these charges were brought after the officers seized three mother dogs and their puppies from three kennels that were stacked on top of one another in a closet with the doors closed. There was no bedding in any of the kennels and the dogs were urine-soaked. There was fecal matter in the kennels. All of the dogs had internal and external parasites and required medical treatment for worms.

Appellant argues that even though the closet doors were closed, the dogs had sufficient fresh air because the doors were louvered. She says that the dogs were in the kennels when the officers arrived because she was still in bed, but that appellee failed to prove that she did not ever let the dogs out of the kennels for exercise.

The record shows that several witnesses testified that they saw the dogs in the kennels in the closet. Each witness was at appellant's home on separate occasions and at different times of the day, yet each recounted a similar story of hearing the dogs in the closet and of seeing the three kennels stacked in the closet with the dogs in them when the closet doors were opened.

The agent for the Fulton County Humane Society testified that he responded to complaints from persons who had seen the dogs in the closet at appellant's home. He went to her home and heard dogs barking in the closet. He explained to her that the dogs should not be kept in the closet because they needed fresh air and exercise. She agreed to remove the dogs from the closet.

He received more complaints and set up an appointment with appellant to look around her home. When he arrived, she opened the closet to show him that no dogs were in the closet. She would not agree to let him see any other part of her home.

Later, when the search warrant was executed, the agent was present. He found dogs in the closet in three kennels that were stacked on top of one another.

The chief dog warden for Lucas County testified that while the louvered doors in the closet permitted the dogs to get enough air to breathe, the dogs still did not have enough fresh air. He testified that the quality of the air the dogs were breathing would be poor and would lead to illnesses because the air would contain contamination from the urine and fecal matter in the kennels. He said that the quality of the air would progressively decrease the longer the closet doors were kept closed. He said disease could easily travel from one dog to another because the dogs would continuously be breathing in air that the other dogs had just exhaled. He stated that even if the closet doors were opened, the dogs would still not get fresh air, because the air in the entire house was saturated with the smell from urine and fecal matter of other dogs.

Based upon the testimony in the record, we cannot conclude that the jury lost its way when it decided that the more credible evidence showed that appellant was responsible for animal cruelty with regard to the dogs that were kept in kennels in the closet. We therefore do not find that her convictions for animal cruelty based upon these charges were against the manifest weight of the evidence. Appellant's second assignment of error is not well taken.

In support of her third assignment of error, appellant argues that she could not be found guilty of theft for the charges brought against her relating to a transaction she made with a customer who bought a dog from appellant thinking that it was a cockapoo. Appellant argues that even if the dog was not a cockapoo, as the customer alleged, and even if the dog did not have any shots from a veterinarian before the customer bought the dog, no theft occurred because the customer paid $150 for the dog and kept the dog.

Appellant points out that at the time the purchase was made, the customer agreed to pay $250 for the dog. The customer paid $75 in cash and paid the rest by check. The customer then stopped payment on the check. She refused appellant's offer to exchange the dog for another dog.

Appellant brought a civil suit against the customer for full payment of the purchase price. At the conclusion of the case, the court ordered the customer to pay appellant $75, for a total of $150. Appellant argues that since she won judgment in the civil case, it is inconsistent to find her guilty of theft for the same transaction in a criminal case.

The record shows that the theft charge brought against appellant for the "cockapoo" transaction was filed pursuant to R.C. 2913.02(A)(3). R.C. 2913.02(A)(3) provides:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

" * ·* *

"(3) By deception."

"Deception" is defined in R.C. 2913.01(A) as follows:

"(A) 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

█ The record shows that in this transaction, the customer responded to an advertisement placed in a newspaper by appellant of a cockapoo for sale. The customer specifically told appellant that she wanted to buy a cockapoo (a dog that is a cross between a cocker spaniel and a poodle). She wanted a cockapoo because they are small dogs that do not shed, important traits to the customer because she wanted the dog as an inside pet for her daughter who suffers from asthma.

On August 19, 1995, the customer gave appellant $75 in cash and wrote a check for an additional $150 to purchase the puppy. At the time of the sale, appellant told the customer that the puppy she purchased was a cockapoo. She said that a vet had checked the puppy and that the puppy had had all its shots, was dewormed, was eating dog food, was drinking water, and was paper-trained. She gave the customer a document that said "Health Records." Attached to the document was the card from a veterinary clinic.

When the customer looked more closely at the document, she saw that the date listed on the form for the puppy receiving shots was August 20, 1995, the day after the customer purchased the puppy and took it home. She called the veterinary clinic listed on the card and learned that the puppy had never been treated at the clinic.[5] She took the puppy to her own vet for an examination. The puppy had worms, was not paper-trained, and was too young to eat dog food and to drink water. The customer stopped payment on the check that she had written to appellant. She testified that if she had known the true breed and condition of the puppy, she would not have purchased the puppy from appellant. However, once she invested money for the purchase and for medical care for the puppy, she was unwilling to return the puppy to appellant.

The customer's vet testified that the puppy was not a cockapoo. He testified that a cockapoo normally weighs around twenty pounds. The puppy is now full grown and weighs forty-four and a half pounds. The veterinarian said that he believes that the puppy is a cross between a cocker spaniel and a golden retriever.

Based upon the testimony of the customer, the manager from the veterinarian clinic, and the veterinarian who regularly treats the dog that the customer purchased, we find there was ample evidence to prove each of the essential elements of the crime of theft by deception beyond a reasonable doubt. Appellant's third assignment of error is not well taken.

---

5. The manager for the veterinary clinic testified at trial and confirmed that the puppy in question was never seen or treated at the clinic.

In support of her fourth assignment of error, appellant argues that she was not guilty of theft for a transaction involving the sale of a German shepherd puppy.[6] She argues that the customers who purchased the puppy got what they wanted, a pure-bred German shepherd puppy.

■ The record contains testimony from a husband and wife who purchased a six-week-old German shepherd puppy from appellant on November 24, 1996. The wife testified that she read an ad placed by appellant in a newspaper for German shepherd puppies for sale. In response to the ad, she called appellant. She said that she wanted "a dog that came from a good background that I could eventually show and I was told that the dogs came from a very good background, that the dog or that the father had been previously shown and had all types of dog awards." Appellant also told the wife that the dogs were registered with the American Kennel Club ("AKC").

The husband and wife went to appellant's home to look at the puppies. Appellant first showed them a six-month-old male German shepherd puppy. When they expressed uncertainty because of his size, appellant showed them a litter of six-week-old puppies. The husband and wife eventually decided to buy one of the six-week-old puppies. They paid appellant $300 for the dog.

Appellant gave them AKC papers when they bought the puppy. They took him home and soon discovered that their infant daughter was allergic to the dog. When the wife called appellant to arrange the return of the dog, appellant refused to return the purchase money for the dog. Instead, appellant said that customers had five days from the date of purchase to take the puppy to a veterinarian. If a veterinarian said that the puppy was not healthy, appellant would exchange it for another puppy.

The wife did take the puppy to a veterinarian. The puppy had tapeworms and was undernourished.

Upon closer examination of the AKC papers, the husband and wife discovered that the papers were not for the puppy they had purchased. The date of birth listed on the documents for the dog showed that the dog was six months old, not six weeks old. The wife testified that she would not have purchased the puppy if she had known that there was a problem with the AKC registration of the puppy.

The husband testified that he too called appellant after he learned about the discrepancy regarding the birth date of the puppy and the AKC papers. He told appellant that he wanted his money back, since the papers were wrong, and she told him that she had already spent the money.

---

6. Appellant was charged with theft pursuant to R.C. 2913.02(A)(3) for the transaction relating to the German shepherd puppy.

Other testimony at trial showed that the dogs listed as parents on the AKC papers for the German shepherd puppy were not really the puppy's parents. The mother dog listed on the AKC papers had puppies six months before the six-week-old puppy was born. A veterinarian testified that it was biologically impossible for that same mother to have a second litter of puppies within six months after she had the first litter of puppies.

In addition, the former owner of the mother dog testified that she owned the dog when it became pregnant, and she gave the dog to appellant in trade when the dog was still pregnant. Appellant later told her that the mother dog had puppies but that they all died. The former owner of the mother dog testified that she knew the identity of the father dog, and it was not the same dog named on the AKC papers that appellant had given to the customers who purchased the six-week-old puppy.

Based upon the testimony in the record, we find that appellee presented evidence to prove each essential element of the crime of theft by deception in regard to the transaction relating to the German shepherd puppy. Appellant's fourth assignment of error is not well taken.

In support of her fifth assignment of error, appellant argues that the jury instructions given at her trial were vague and confusing. She states that Jose Vasquez was a codefendant who was tried at the same time. She says that the trial court failed to clearly inform the jury that she could not be convicted of crimes that Jose Vasquez committed. She also contends that the trial court mixed together the instructions for the two theft charges.

Appellant's trial counsel made no objection at trial that the jury instructions were vague and confusing or that the instructions on the theft charges were mixed together. Therefore, unless appellant can show the existence of plain error, any error that occurred in the instructions was waived for appeal. See, e.g., *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 170, 404 N.E.2d 144, 146; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph one of the syllabus. A plain error is an "obvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects 'the fairness, integrity or public reputation of judicial proceedings.'" *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 6 O.O.3d 1, 4, 367 N.E.2d 1221, 1225, quoting *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557.

■ Finally, jury instructions must be viewed as a whole to determine whether they are prejudicial. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 16, 19 OBR 71, 81–82, 482 N.E.2d 955, 966–967.

■ We have carefully reviewed the jury instructions in this case and have determined that when the jury instructions are considered as a whole, we cannot find that they were prejudicial to appellant. We do not find that the instructions were vague or misleading or confusing. Appellant's fifth assignment of error is not well taken.

In support of her sixth assignment of error, appellant argues that she should not have been convicted for not filing an income tax return for the village of Swanton in 1995. She states that since she did not have any income in 1995, she should not have to file a federal or a local income tax return. She also asserts that the ordinance imposing an obligation to file a local income tax return is so confusing that she could not understand it and could not form "the necessary criminal intent to violate the [ordinance]." She does not explain why she believes that the ordinance is confusing.

The record contains a receipt seized at appellant's home by the officers who served the search warrant. The receipt shows that appellant's business sold eighty-three dogs in a three-month period in 1995. The record also contains a letter sent to appellant from the clerk of the village of Swanton, stating:

"This letter is being sent to you regarding your personal Village of Swanton income tax. You had notified this office that you had no income for 1995.

"Income taxable to the Village is either in the form of W2 earnings from a place of work, or personal income from a business run out of the home.

"It has come to my attention that you conduct a business out of your home, and therefore are subject to Swanton Village income tax. You will need to amend your statement to us of no income, and submit the appropriate forms to us regarding your business profit/loss for 1995. We will need to have a copy of your federal schedule C which breaks down your profit/loss status.

"I am sending another copy of the 1995 Village income tax form for your use. This must be submitted to our office by July 19, 1996. If you have any questions you may contact me at any time."

Section 35.05 of the Swanton Ordinances provides:

"(A) Each taxpayer * * * shall whether or not a tax be due thereon make and file a return on or before April 30 of the year following the effective date of this chapter, and on or before April 30 of each year thereafter. * * *

"(B) The return shall be filed with the Tax Administrator on a form or forms furnished by or obtainable upon request from such Tax Administrator setting forth:

" * * *

"(b) The gross income from a business, profession or other activity less allowable expenses incurred in the acquisition of such gross income * * *."

We find that the language used in the ordinance clearly informs persons who conduct a business in the village of Swanton that they must file an income tax return to show a profit or loss from a business conducted in the village. Appellee presented evidence showing that appellant did conduct a business in the village of Swanton during 1995 and that she did not file a local income tax return for that year. Accordingly, sufficient evidence was introduced to prove beyond a reasonable doubt that appellant was guilty of failing to file a local income tax return in 1995. Appellant's sixth assignment of error is not well taken.

In support of her seventh assignment of error, appellant argues that she cannot be ordered to serve time in jail. She states that the sentencing orders filed by the trial court in a judgment entry specify that appellant is to spend thirty days in jail on each separate conviction. The judgment entry has no statement from the trial court whether the sentences are to be served consecutively or concurrently. Therefore, appellant argues, this court must "assume that each charge should be served concurrently."

The trial court ordered that one hundred and fifty days of the ordered jail time be suspended. Appellant states: "Since more time (150 days) was suspended than given (30 days) to the Appellant, this court must hold that Appellant cannot be sentenced to jail."

Appellee agrees that the sentencing judgment entry does not contain any statement regarding whether appellant is to serve the sentences consecutively or concurrently. Appellee refers this court to the transcript from the sentencing hearing, where the trial judge indicated his intention that appellant serve the sentences consecutively, and argues that appellant can be compelled to serve jail time because not all of the jail time was suspended.

In Ohio, a court speaks only through its journal. *Hower Corp. v. Vance* (1945), 144 Ohio St. 443, 448, 30 O.O. 38, 40–41, 59 N.E.2d 377, 379–380. A judge's written or oral pronouncement is not recognized as an action of a court unless it is entered upon the journal. *Boyle v. Pub. Adjustment & Constr. Co.* (1950), 87 Ohio App. 264, 268, 42 O.O. 478, 480, 93 N.E.2d 795, 797. In this case, the trial court never specified on the journal whether the sentences it imposed

upon appellant were to be served consecutively or concurrently. Appellant is correct that when no specification is made on the journal, the assumption must be made that the sentences are to be served concurrently. R.C. 2929.41. Accordingly, appellant's seventh assignment of error is well taken.

■■ In support of her eighth assignment of error, appellant argues that the trial court abused its discretion when it ordered her to forfeit all of her dogs as a condition of probation. She argues that since she was not convicted of abusing all of the dogs that were seized from her possession, she should be forced to forfeit only those dogs the jury found that she had abused. She argues that R.C. 959.99(D) "provides for the forfeiture of only 'the animal or livestock' that was treated cruelly in violation of R.C. 959.13(A), rather than all animals or livestock that one who violates R.C. 959.13(A) possesses."

An identical argument was made to the Fourth District Court of Appeal by a defendant who was convicted of abusing horses he owned. *State v. Sheets* (1996), 112 Ohio App.3d 1, 8–9, 677 N.E.2d 818, 822–823. The Fourth District Court of Appeals rejected the argument, stating:

"A trial court may impose requirements on an offender as a condition of probation '[i]n the interest of doing justice, rehabilitating the offender, and ensuring the offender's good behavior.' R.C. 2951.02. A trial court has broad discretion in determining conditions of probation and will not be subject to reversal on appeal absent an abuse of that discretion. *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469, 470. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 149.

"Appellant was convicted of ten violations of R.C. 959.13(A)(1), which provides that '[n]o person shall * * * impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water.' R.C. 959.99(D) states:

" 'Whoever violates [R.C. 959.13(A)] is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock and may provide for its disposition including, but not limited to, the sale of the animal or livestock. If an animal or livestock is forfeited and sold pursuant to this division, the proceeds from the sale shall first be applied to pay the expenses incurred with regard to the care of the animal from the time it was taken from the custody of the former owner. The balance of the proceeds from the sale, if any, shall be paid to the former owner of the animals.'

"Appellant claims that the trial court abused its discretion by setting probationary conditions that exceeded the divesture power of R.C. 959.99(D). Appellant argues that R.C. 959.99(D) provides for the forfeiture of only 'the animal or

livestock' that was treated cruelly in violation of R.C. 959.13(A), rather than all animals or livestock that one who violates R.C. 959.13(A) possesses. Therefore, appellant claims that the trial court was authorized, pursuant to R.C. 959.99(D), to order the divesture of only ten of appellant's horses, rather than all one hundred twenty-two.

"In *State v. Jones, supra*, the Ohio Supreme Court upheld a condition of probation that the defendant not associate or communicate with anyone under the age of eighteen. We note that the defendant in *State v. Jones* could not have been barred from associating or communicating with minors as part of his sentence. *State v. Jones* demonstrates that conditions of probation may be imposed which were not authorized pursuant to sentencing. Rather than focusing exclusively on whether a condition of probation was authorized pursuant to the Revised Code for purposes of sentencing, '[c]ourts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation.' *Id.*, 49 Ohio St.3d at 53, 550 N.E.2d at 470.

"We therefore reject appellant's assertion that the trial court was limited by R.C. 959.99(D) when it ordered divesture and other similar conditions as part of probation. The probationary conditions that appellant challenges certainly have a relationship to the crime of which he was convicted. Appellant failed to properly feed his horses and the probationary conditions prohibit him from owning or possessing horses. The conditions also relate to future criminality by preventing appellant from being in a position, as owner or possessor of a horse, where he would be responsible for the animal's feeding. Finally, the conditions relate to rehabilitation by impliedly permitting appellant to own and possess horses in the future. We therefore find that the trial court did not abuse its discretion in its formulation of conditions for appellant's probation. See *State v. Drakulich* (Sept. 30, 1992), Portage App. No. 91–P–2352, unreported, 1992 WL 274613. Appellant's third assignment of error is overruled." *Id.*

We note that the Eighth and Tenth District Courts of Appeals have reached a different conclusion on the question of whether a trial court can impose a condition of probation that results in a greater penalty than the trial court could impose pursuant to the sentencing provisions for the crime the defendant is convicted of committing. See *Independence v. Tector* (1996), 116 Ohio App.3d 359, 688 N.E.2d 276; *Columbus v. Davis* (May 30, 1991), Franklin App. No. 90AP–1423, unreported, 1991 WL 94452. Both courts ruled that a trial court may not impose a probationary condition that indirectly enhances the statutorily

maximum penalty for a crime. *Independence v. Tector*, 116 Ohio App.3d at 362, 688 N.E.2d at 278; *Columbus v. Davis, supra.*

We agree with the analysis of the Fourth District Court of Appeals and conclude that a trial court can impose a condition of probation that exceeds the penalty that could be imposed for the crime as long as the condition for probation meets the three-part test established by the Supreme Court of Ohio in *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469, 470, and is not an abuse of discretion. See, also, *State v. Lusher* (Nov. 7, 1997), Wood App. No. WD–97–006, unreported, 1997 WL 703339. We further conclude that under the facts of this case, the probation requirement that appellant forfeit all of her dogs does meet the three-part test from *State v. Jones* and is not an abuse of discretion.

First, the condition is reasonably related to rehabilitating the offender, since she will presumably be able to own dogs again once she has completed her probation. Second, the condition has a relationship to the crime that she committed, failing to provide animals with adequate air and wholesome exercise. Third, the condition is related to future criminality and serves the statutory ends of probation, since it will ensure that appellant has no further opportunity to commit cruelty to animals during the term of her probation. Appellant's eighth assignment of error is not well taken.

In support of her ninth assignment of error, appellant argues that she was denied due process of law, due to the cumulative effect of errors made by the trial court in her case. She specifically argues that the trial court committed three errors that denied her due process of law.

First, she argues that the trial court improperly required her trial counsel to present his arguments that a juror should be dismissed for cause in front of the jury. She contends that the objectivity of the other jurors was tainted when they heard his arguments. She also argues that she was forced to waste a preemptory challenge when the trial court refused to dismiss the juror for cause.

We have carefully reviewed the record and find no demonstrable prejudice to appellant with regard to the trial court's rulings on the issue of whether the potential juror in question should have been dismissed for cause. Nothing in the record supports appellant's assertions that the objectivity of the jurors was tainted when they heard the arguments presented by counsel that the potential juror should be dismissed for cause. In addition, she was not prejudiced when her counsel used a preemptory challenge to remove the potential juror because she still had preemptory challenges left to use when her counsel expressed satisfaction with the composition of the jury and when the case proceeded to trial.

Second, she argues that the testimony of a witness that ten German shepherd puppies in the home were not in good health prejudiced the jury. She acknowledges that the jury acquitted her of cruelty-to-animal charges relating to the German shepherd puppies, but argues that the cumulative nature of the testimony inflamed the jury.

Once again, we find nothing in the record to support appellant's assertions. The witness in question works as an assistant to a veterinarian. She went to appellant's home as a customer and purchased three dogs from appellant. She did give testimony regarding what she observed about the physical condition of ten German shepherd puppies she saw in appellant's home. However, when she made a conclusory statement that she thought the puppies were unhealthy, the trial court upheld an objection made by appellant's trial counsel, stating that more foundation was needed. Furthermore, we find that the jury's acquittal of appellant on the charge of cruelty in relationship to the German shepherd puppies was clear proof that the jury was not inflamed by the testimony.

Third, appellant argues that the trial court improperly allowed the agent for the Fulton County Humane Society to testify about the health of a dog in relationship to wholesome air. Appellant argues that the agent was not qualified as an expert and should not have been permitted to give opinion testimony.

The Supreme Court of Ohio has stated:

"To qualify as an expert, the witness need not be the best witness on the subject. The expert must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary juror. A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." (Citations omitted.) *Scott v. Yates* (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105, 106–107

An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

We have carefully reviewed the testimony of the agent from the Fulton County Humane Society and conclude that the trial court did not abuse its discretion when it permitted him to testify about the connection between wholesome air, exercise, and the health of a dog. The agent testified that he has worked with numerous veterinarians, has completed basic cruelty investigation courses, and has worked with some animal behavioralists. He was therefore qualified to render the opinion he gave.

Even if the agent was not qualified to give the opinion that the dogs seized in appellant's home lacked wholesome air and exercise, appellant suffered no prejudice from his testimony. The chief dog warden for Lucas County gave similar testimony without any objection from appellant. Therefore, appellant's ninth assignment of error is not well taken.

The judgment of the Fulton County Court, Eastern Division, is affirmed. Appellant is ordered to pay the court costs of this appeal. Due to our disposition of appellant's seventh assignment of error, appellant cannot be compelled to serve any jail time. Due to our disposition of appellant's eighth assignment of error, this court certifies the record of this case to the Supreme Court of Ohio pursuant to Section 3(B)(4), Article IV of the Ohio Constitution. The question certified is whether a trial court can impose a requirement as a condition of probation that exceeds the punishment the trial court could impose under the statutorily established penalty for the crime for which a defendant is convicted

*Judgment affirmed in part.*

KNEPPER, J., concurs.

SHERCK, J., concurs in part and dissents in part.

SHERCK, Judge, concurring in part and dissenting in part.

I concur with the majority's handling of appellant's assignments of error two through nine. I, however, dissent as to appellant's resisting-arrest conviction. I do not believe that appellant's passive resistance constituted recklessness or force sufficient to convict her of this offense.