[Cite as *Cleveland v. Norman*, 2019-Ohio-697.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106742**

**CITY OF CLEVELAND**

PLAINTIFF-APPELLEE

vs.

**ANTHONY NORMAN**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2017 CRB 010691

**BEFORE:** Keough, J., Jones, P.J., and Sheehan, J.

**RELEASED AND JOURNALIZED:** February 28, 2019

**ATTORNEY FOR APPELLANT**

Leslie E. Wargo
Wargo Law, L.L.C.
1501 North Marginal Road, Suite 116
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Law Director
City of Cleveland - Law Department
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

Jonathan L. Cudnik
Assistant City Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


KATHLEEN ANN KEOUGH, J.:

{¶1}    Defendant-appellant, Anthony Norman, appeals from the trial court's judgment finding him guilty of resisting arrest. Because there was insufficient evidence to support the conviction, we reverse and discharge Norman from further prosecution on this offense only.

## I.    Background

{¶2} On May 16, 2017, the city of Cleveland charged Norman with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a); driving while under suspension in violation of R.C. 4510.16; failure to use turn signals in violation of R.C. 4511.39(A); failure to use a seatbelt in violation of R.C. 4513.263(B)(1); and having an open container of alcohol in a motor vehicle in violation of R.C. 4301.62(B)(4). The charges arose from a traffic stop of

Norman initiated by Trooper Walter Martens of the Ohio State Highway Patrol on May 16, 2017.

{¶3} On May 24, 2017, the city filed an additional complaint against Norman charging him with resisting arrest in violation of R.C. 2921.33(A). The complaint charged that Norman was stopped by Martens on May 16, 2017, for failing to use his turn signal while driving on I-90 near Lorain Avenue in the city of Cleveland. The complaint further alleged that after Norman was stopped, Martens determined that he was driving while under the influence of alcohol, and that when he was arrested, "Mr. Norman resisted arrest and struck Trooper Martens in the chest with his fist."

{¶4} The cases were consolidated and proceeded to a bench trial.

{¶5} Trooper Martens was the only witness to testify at trial. He testified that at approximately 1:15 a.m. on May 16, 2017, he initiated a traffic stop after he observed a Saturn SUV change lanes twice without signaling. Martens testified that he approached the driver's side of the vehicle and determined the vehicle was occupied by the driver and two female passengers. Martens said that when the driver's side window was rolled down, he could smell an odor of alcohol coming from the driver. Martens testified that when he stated the reason for the stop, the driver became belligerent, "using abusive language, not really complying with my demands." Martens said he then asked the driver for his identification, the driver complied, and Martens identified Norman as the driver.

{¶6} Martens testified that he saw an open container of alcohol in the car when Norman gave him his identification. He said he could smell an odor of alcohol coming from Norman and observed that Norman's eyes were red and glassy. Martens said that he then asked Norman to get out of the car. Martens testified that when Norman stepped out of the vehicle, "I then had

him place his hands behind his back. At that time he moved his arm back from me twice as I tried to grab it. And then he turned around, struck me in my chest. And at that time I deployed my taser."

{¶7} The prosecutor then played the dashcam video of Trooper Martens's encounter with Norman, which was admitted into evidence.[1] Specifically with regard to Norman hitting him, Martens testified that the video reflected that Norman got out of the car upon his request, and then "I asked him to place his hands behind his back and that's when he shoved me and struck me in my chest with his hand." Martens testified that he decided to use his taser after Norman shoved him twice.

{¶8} The prosecutor then asked Martens, "[a]t what point during this interaction did you decide that you were going to place the defendant under arrest?" Martens responded, "[t]he moment after I tased him." Martens testified that the video demonstrated that after he tased Norman, he placed him under arrest, put handcuffs on him, and advised him of his rights. Martens testified further that Norman was not "doing anything" as he placed him in handcuffs "because he had been subdued."

{¶9} On cross-examination, Martens testified that he drafted a report of the incident several days after Norman's arrest. Martens testified that the report stated:

> I went to grab his right arm and he pulled away from me. Mr. Norman then swung his right elbow twice aggressively in an attempt to strike me while stating, "get off me," and walked away a couple of feet. Mr. Norman then faced toward me like he wanted to fight.

Martens agreed that the report did not state that Norman ever hit him.

---

[1]A LEADS report of Norman's driving record was also admitted.

{¶10} Martens confirmed on cross-examination that he did not decide to arrest Norman until after he had tased him, at which point he was able to handcuff Norman and read him his rights "without incident."

{¶11} The trial court granted Norman's Crim.R. 29 motion regarding the seatbelt violation but denied the motion regarding the other offenses. The court then proceeded to judgment. It found Norman not guilty of driving under the influence of alcohol but guilty of the remaining charges. This appeal followed.

## II. Law and Analysis

{¶12} In his first assignment of error, Norman asserts that the trial court erred in denying his Crim.R. 29 motion for acquittal on the resisting arrest charge because there was insufficient evidence to support a conviction.

### A. Dashcam Video and LEADS Report Not Part of the Appellate Record

{¶13} Before considering this assignment, we must first address the absence from the appellate record of the dashcam video and LEADS report, both of which were admitted into evidence in the trial court. Although defense counsel repeatedly attempted to locate the exhibits, the trial judge certified to this court that the exhibits had been misplaced and the court could not produce them for appeal.

{¶14} It is the appellant's responsibility to provide the court with a record of the facts, testimony, and evidentiary matters that are necessary to support the appellant's assignments of error. *State v. Smith*, 8th Dist. Cuyahoga No. 94063, 2010-Ohio-3512, ¶ 11. Thus, in the absence of a complete record, an appellate court must presume regularity in the trial court's proceedings. *Id.* We cannot presume regularity, however, where the record is incomplete due to the trial court's failure to secure the exhibits.

**{¶15}** Nevertheless, Norman's argument that this court should find that the evidence was insufficient to support his conviction simply because the exhibits are not part of the record at no fault of appellant is without merit. Despite Norman's argument, *State v. Harper*, 1st Dist. Hamilton No. C-130134, 2013-Ohio-5217, does not stand for this proposition.

**{¶16}** In *Harper*, a police officer testified at trial that he believed the defendant had "clamped up" when he was told he was under arrest, but the officer "deferred to the video" to show exactly what occurred. *Id.* at ¶ 14. The trial court relied on the video to find the defendant guilty. *Id*. at ¶ 6. Upon appeal, the city had the video in its file and knew defense counsel was making every effort to make the video part of the appellate record, but it did not supplement the appellate record to include the video because the prosecutor believed it was the appellant's duty to do so. *Id.* at ¶ 13. The appellate court ruled that because the city could have supplemented the record but chose not to do so, its review was limited to the record before it. *Id*. Further, the court found that because the video was not part of the appellate record, it was unable to determine whether the defendant "clamped up" or did anything else to resist arrest. *Id.* at ¶ 14. The court found that it was therefore unable to conclude that the city had presented sufficient evidence of the offense and reversed the defendant's conviction. *Id.* at ¶ 14-15.

**{¶17}** Here, unlike in *Harper*, the question of whether Norman resisted arrest was not entirely dependent upon the missing exhibits. Even before the video was shown at trial or the LEADS report introduced, Martens testified about what transpired in his encounter with Norman that led to the resisting-arrest charge. Because the trial court could have considered Martens's testimony in reaching its verdict, and not relied only on the dashcam video and the LEADS report, we cannot conclude based solely upon the absence of the exhibits from the record that there was insufficient evidence to sustain Norman's conviction. As in *Harper*, we must review

the record before us in considering whether there was sufficient evidence to sustain the conviction.

**B.    Sufficiency of the Evidence**

{¶18} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶19} Norman was charged with resisting arrest in violation of R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Thus, the statute makes clear that a lawful arrest is an essential element of the offense of resisting arrest. *State v. Mahalli*, 8th Dist. Cuyahoga No. 103183, 2016-Ohio-940, ¶ 16, citing *State v. Barker*, 128 Ohio App.3d 233, 240, 714 N.E.2d 447 (6th Dist.1998). Furthermore, the statute prohibits a person from resisting arrest "recklessly or by force." Ohio courts have interpreted this to prohibit "physical activity which prevents or delays an arrest." *State v. Keegan*, 67 Ohio App.3d 824, 827, 588 N.E.2d 928 (1st Dist.1990).

{¶20} An arrest occurs when four requisite elements are present: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, (4) which is so understood by the person arrested. *Cleveland v. Coleman*, 8th Dist. Cuyahoga No. 97128, 2012-Ohio-3942, ¶ 22, citing *State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980).

{¶21} Trooper Martens testified that he decided to arrest Norman after he tased him. Martens testified further that it was only after he had subdued Norman with his taser that he advised him he was under arrest, handcuffed him, and read him his rights. Moreover, Martens testified that he handcuffed Norman and read him his rights "without incident" because Norman "had been subdued" by the taser.

{¶22} Thus, by his own testimony, Martens made clear that Norman was not under arrest when he allegedly struck Martens in the chest. Because Norman was not actually arrested until after Martens had already subdued him, there was no lawful arrest for Norman to resist until that point. Moreover, because Martens made clear that he arrested Norman "without incident" after subduing Norman with his taser, it is apparent that Norman did not engage in any physical activity to prevent or delay his arrest.

{¶23} Viewing the evidence in a light most favorable to the prosecution, we can only conclude that there was no point at which Norman was under arrest and resisting. Thus, the state failed to prove the essential elements of the offense. Accordingly, the evidence was insufficient to support Norman's conviction for resisting arrest. *See, e.g.*, *State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843 (1st Dist.) (evidence insufficient to sustain a conviction for resisting arrest under R.C. 2921.33(A) where the defendant was not actually arrested until after the police had already subdued him and was not under arrest when he resisted the police officers' attempts to restrain him).

{¶24} We sustain the first assignment of error, reverse Norman's conviction, and discharge him from further prosecution on this offense only. The second assignment of error, which asserts that the conviction was against the manifest weight of the evidence, is therefore moot and we need not address it. App.R. 12(A)(1)(c).

**{¶25}** Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., and
MICHELLE J. SHEEHAN, J., CONCUR