[Cite as *State v. Bleau*, 2025-Ohio-1951.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/ City of Toledo   Court of Appeals No. L-24-1128

   Appellee      Trial Court No. CRB-24-01653

v.

Mariah Bleau      **DECISION AND JUDGMENT**

   Appellant     Decided:  May 30, 2025

* * * * *

Laurel A. Kendall, Esq., for appellant.

Rebecca Facey Prosecuting Attorney and
Jimmie L. Jones, Esq., Assistant Prosecutor for appellee.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Mariah Bleau, appeals from the Toledo Municipal Court's May 14, 2024 judgment convicting her of one count of trespassing and one count of resisting arrest.   For the following reasons, we affirm the trial court's judgment.

**A. Facts and Procedural Background**

{¶ 2} On February 24, 2024, appellant was charged with one count of trespassing in violation of R.C. 2911.21(A)(1) and one count of resisting arrest in violation of R.C. 2921.33(A).  The incidents underlying the offenses occurred earlier that day at Toledo Hospital in Toledo, Lucas County, Ohio. Appellant appeared before the trial court on February 26, 2024, and entered a not guilty plea to both charged offenses.  She was then determined to be indigent and was appointed defense counsel.

{¶ 3} Following discovery, the matter proceeded to a bench trial on May 14, 2024. The arresting officer, Austin Jacobs, and appellant were the only witnesses called to testify.  A summary of their testimony follows:

**Testimony of Officer Austin Jacobs**

{¶ 4} At the time of trial, Officer Austin Jacobs had been employed as a police officer at Promedica Toledo Hospital for two years.  He was on duty on the morning of February 24, 2024, when he was notified by dispatch that appellant was lying on a couch in a hallway between the hospital's "A" and "C" entrances.  He and two other officers were asked to go check on appellant to see if she needed help or was waiting on a ride. Appellant informed Jacobs that she was waiting on a ride from the hospital.  Jacobs and the other officers directed appellant to entrance "C" as it was open 24 hours while entrances "A" and "B' would not permit entrance to the facility at that time. [1] A video of

_____

[1] Neither party elicited testimony regarding the time each of Jacobs's multiple interactions with appellant occurred and the security videos played at trial are not time-

2.

Jacobs's initial interaction with appellant, without audio, was recorded by a security camera in that hallway and was admitted into evidence, without objection, as part of the state's composite Exhibit A.

{¶ 5} Approximately an hour later, Jacobs again encountered appellant inside the hospital. He asked her to verify that she had a ride coming to pick her up. Appellant could not do so and Jacobs asked her to leave the property.

{¶ 6} Jacobs testified that he next encountered appellant, for a third and final time, in the entrance to a stairwell leading to an underground parking garage. The entrance is still located on hospital property and is on the "back part of the hospital" near entrances "A" and "B." Jacobs testified that appellant walked to this location after their second interaction. Upon reaching the stairwell, he joined two other officers already speaking with appellant. Jacobs informed appellant that she was under arrest for trespassing. Appellant then "attempted to run away" from the officers. She was placed in handcuffs and the officers called a female officer to search appellant for weapons. While she was being searched, appellant continued to "pull away" from Jacobs and the female officer. Jacobs noted that he had previously informed appellant prior to this third encounter that if she did not leave the premises that she could be arrested for trespassing. A video of this third incident was also recorded by a security camera and was admitted into evidence,

---

stamped. Appellant describes the initial interaction as occurring at approximately 3:00 a.m. with the second interaction occurring at approximately 4:00 a.m.

without objection, as part of the state's composite Exhibit A. Jacobs's did not offer any specific testimony regarding the contents of either video.

{¶ 7} On cross-examination, Jacobs confirmed that he initially agreed to allow appellant to remain on hospital property while she waited on her ride, as described in their first interaction. He noted that after informing appellant to leave the property during their second interaction, she vacated the hospital but did not leave the grounds. Instead, she proceeded to the stairwell outside of the hospital but still remained on hospital property. Jacobs also conceded that it was "quite cold" at the time appellant entered the stairwell. He confirmed that appellant had been informed that she was under arrest before trying to evade officers and pulling away from him while in handcuffs.

**Testimony of Appellant Mariah Bleau**

{¶ 8} Appellant began her testimony with a summary of the events that occurred on February 24, 2024. On that date, appellant went to Toledo Hospital to receive treatment for a knee injury. After completing her treatment, she found a hallway couch to sleep on because she was homeless, had been kicked out of a homeless shelter, and did not want to go outside due to inclement weather. At around 3:00 a.m., as she began to fall asleep, Officer Jacobs approached her and asked what she was doing there. She informed him that she did not have anywhere to stay and that she was waiting to have a friend pick her up or that she would "catch the first bus." She said Jacobs agreed that she could stay in the hospital but he asked her to wait in a different part of the hospital.

4.

{¶ 9} Once she arrived there, she found another bench. She did not cause any "disturbance" but was again approached by Jacobs. He asked her to move "farther down the hospital" but she believed they were still under the agreement that she could remain in the building while waiting for her ride. She believed that the first bus would be available "probably 6:00 a.m.-ish." If the bus did not arrive by 7:00, she planned to leave since it would be "light out" at that time. Appellant testified that there was a third encounter with Jacobs inside the hospital[2] but she did not offer any specific details about that encounter.

{¶ 10} Appellant next described her final encounter with Jacobs. She testified that she was "trying to leave the hospital" when she found the covered stairwell entrance. She went inside the stairwell to obtain shelter from the weather. She believed that this should not have been an issue of concern because she was not causing a disturbance and "[i]t's a public hospital." She stated that when she entered the stairwell, she contacted a ride share service. At this point, she claimed that the officers "rushed" her and arrested her.

{¶ 11} On cross-examination, appellant stated that she was not at the hospital seeking treatment despite her prior testimony. She then alleged that her arrest was an "abuse of litigation."

---

[2] Jacobs described only two encounters with appellant *inside* the hospital with a third encounter in the stairwell to the parking garage.

## Closing Arguments, Verdict, and Sentencing

{¶ 12} At the conclusion of appellant's testimony, the trial court heard closing arguments. The state argued that Jacobs's testimony showed that appellant was asked to leave the property and declined to do so, satisfying the elements of trespass. The state also argued that Jacobs's testimony that when appellant was placed under arrest that she was "pulling away, tugging, [and] trying to leave" satisfied the elements of resisting arrest. Appellant argued that each of her encounters with Jacobs took place under their initial agreement that she could wait at the hospital for her ride. She argued that her arrest occurred when she was "leaving the property" in compliance with Jacobs's instructions and, therefore, she was not committing a trespass. She also argued that Jacobs's description of their encounter in the stairwell did not satisfy the elements of resisting arrest.

{¶ 13} The trial court found appellant guilty on both counts. The trial court concluded that appellant was aware, through her own testimony, that she had been asked to leave the property but did not do so. The trial court also determined that appellant's attempt to walk or run away from Jacobs and her pulling away after being placed in handcuffs showed that she had resisted her arrest. The trial court then sentenced appellant to thirty days in jail, with all time suspended, and six months of unsupervised probation.

## B. Assignments of Error

{¶ 14} Appellant timely appealed and asserts the following errors for our review:

6.

1. [Appellant's] conviction for criminal trespass was not supported by the manifest weight of the evidence.

2. In the alternative, the trial court committed plain error when it did not apply the common law defense of "necessity" to the offense of criminal trespass, when appellant was at the hospital, arguably rightfully, but homeless, in February, without transportation, and potentially exposed to injury when ejected from hospital property, into cold weather.

3. [Appellant's] conviction for resisting arrest was not supported by the manifest weight of the evidence.

We review appellant's second assignment of error first as it informs our analysis of appellant's remaining assignments of error. Additionally, because they are analyzed under the same standard of review, we address appellant's first and third assignment of error jointly.

## II. Law and Analysis

### A. Appellant forfeited her affirmative defense of necessity to her trespass offense.

{¶ 15} In her second assignment of error, appellant argues that the trial court committed plain error when it failed to consider the affirmative defense of necessity to the criminal trespass offense. Specifically, she argues that the trial court should have considered that Toledo Hospital's revocation of her privilege to remain on their property would have exposed her to dangerous elements due to the cold temperatures. Appellant concedes, however, that she did not raise this defense at trial.

{¶ 16} In support of her argument that the trial court committed plain error by not considering the unalleged affirmative defense of necessity, appellant cites *State v.*

7.

*Marzette,* 1999 WL 218159 (2d. Dist. April 16, 1999). There is no holding in *Marzette*, or even a suggestion, that a trial court commits plain error when it fails to consider an affirmative defense that the defendant did not raise at trial. Moreover, this court did not find any authority in support of appellant's argument. We do, however, find *Marzette* instructive on this issue in that it held "the defense of necessity was not argued in the trial court and accordingly cannot be raised for the first time on appeal." *Id.* at 1. *See also State v. Talley,* 2021-Ohio-2558 (6th Dist.) (holding that arguments raised for the first time on appeal are barred by the doctrine of waiver); *State v. Pimental,* 2005-Ohio-384 (8th Dist.) (holding that affirmative defenses must be raised at trial or they are forfeited, pursuant to R.C. 2901.05(C)(2)).

{¶ 17} Appellant's failure to raise necessity as an affirmative defense to the trespassing offense at trial precludes her from raising it for the first time in this appeal. Further, there is no basis on which we can find error in the trial court's failure to consider this unalleged affirmative defense. As a result, we find appellant's second assignment of error not well-taken.

{¶ 18} We note that in her first and third assignments of error, appellant argues, in part, that the inclement weather supports her argument that her convictions were against the manifest weight of the evidence. Because the inclement weather relates to her forfeited necessity defense, we do not consider it in our analysis of those assigned errors.

**B. Appellant's convictions were not against the manifest weight of the evidence.**

8.

{¶ 19} In her first and third assignments of error, appellant argues that her convictions for criminal trespass and resisting arrest were against the manifest weight of the evidence. "In a bench trial, the court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, it must be determined that the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *State v. Hayes,* 2004-Ohio-6460, ¶ 18 (6th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997). "Due deference must be accorded the findings of the trial court because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*, citing *State v. Archie,* 2004-Ohio-4844 (6th Dist.). Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). We find that appellant's convictions for trespassing and resisting arrest were not against the manifest weight of the evidence.

*i. Appellant's trespassing conviction.*

{¶ 20} A trespass occurs when a person, without privilege to do so, knowingly enters or remains on the land or premises of another. R.C. 2911.21(A)(1); *State v. Mills,* 2023-Ohio-1094 (6th Dist.). "If a defendant's presence at the property is initially lawful, a trespass may nevertheless occur if the defendant's privilege is revoked or terminated. *Id.* at ¶ 22, citing *State v. Petefish,* 2011-Ohio-6367 (7th Dist.). Here, Jacobs's testimony

9.

shows that appellant's presence in the hospital was initially lawful as he allowed her to wait on a ride at entrance "C" following their initial encounter. Jacobs later advised appellant that she could no longer wait for a ride and to vacate the premises. He also advised her that if she did not leave, she would be subject to arrest. Appellant did not leave the premises but instead walked to the covered stairwell leading to the hospital's parking garage. Jacobs then arrested her for trespassing.

{¶ 21} Appellant argues that her privilege had not been revoked at the time she was arrested because she was still waiting for her ride when she entered the stairwell. Alternatively, she argues that if her privilege had been revoked, she substantially complied with Jacobs's order to leave the property by moving to the stairwell. Appellant cites no authority that allows for "substantial compliance" with an order to leave as a defense to a trespassing offense. Further, Jacobs's testimony shows that her privilege to remain on the premises was explicitly revoked, while her own testimony acknowledges that she was "asked to leave." In light of this evidence, we cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding appellant guilty of trespassing in violation of R.C. 2911.21(A). As a result, her conviction for trespassing was not against the manifest weight of the evidence.

*ii.  Appellant's resisting arrest conviction.*

{¶ 22} R.C. 2921.33(A) states "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." A "lawful arrest" is an element of the offense of resisting arrest. *State v. Barker,* 128 Ohio App.3d 233 (6th Dist. 1998).

10.

Appellant argues that her conviction for resisting arrest in violation of R.C. 2921.33 was against the manifest weight because the arrest was "arguably unlawful" because she "was not causing a disturbance and was arguably simply trying to avoid exposure to the elements while she waited for a bus[.]" She also argues that the evidence does not show that she interfered with her own arrest even if it were deemed lawful.

{¶ 23} Having already concluded that appellant's conviction for trespassing was not against the manifest weight of the evidence, we find that her arrest for that offense was lawful. Importantly, appellant's argument that her arrest was unlawful because she was not creating a disturbance attempts to add an element not found in the offense of trespassing and is irrelevant to our analysis. Whether appellant remained on the property peacefully or not has no bearing on whether her arrest for violating R.C. 2911.21(A) was lawful.

{¶ 24} As to whether the evidence showed appellant resisted her lawful arrest, Jacobs's testimony showed that appellant either ran or walked away after being informed that she was under arrest. Further, Jacobs testified that appellant continued to "pull away" from him even after she was placed in handcuffs. Appellant offered no testimony disputing Jacobs's assertions. As a result, the trial court did not lose its way in finding appellant guilty of resisting arrest in violation of R.C. 2921.33(A) and its judgment is not against the manifest weight of the evidence.

11.

**{¶ 25}** In sum, we find that appellant's convictions for trespassing and resisting arrest were not against the manifest weight of the evidence. Therefore, we find appellant's first and third assignments of error not well-taken.

### III. Conclusion

**{¶ 26}** For these reasons, we find appellant's first, second, and third assignments of error not well-taken and we affirm the Toledo Municipal Court's May 14, 2024 judgment.

**{¶ 27}** Appellant is ordered to pay the costs of this appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.
CONCURS.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.