[Cite as *State v. Harper*, 2013-Ohio-5217.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130134 |
| | | TRIAL NO. 12CRB-26827-B |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| GREGORY HARPER, SR., | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: November 27, 2013

*John Curp*, City Solicitor, *Charlie Rubenstein*, City Prosecutor, and *Eric Cook,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Michele L. Berry*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    This is an appeal from a conviction for resisting arrest.   We are compelled to reverse because the city of Cincinnati's prosecutor's office chose to keep a critical exhibit admitted at trial—a video of the alleged incident—in a desk drawer rather than making it a part of the record on appeal.   Because the appellate record as it stands does not contain sufficient evidence of the offense, we reverse the judgment of the trial court and discharge defendant-appellant Gregory Harper from further prosecution.

I.

{¶2}    The case began with a 911 call by Mr. Harper, complaining that his roommate, Denise Cheatham, had assaulted him.   When Cincinnati police officers responded to the call, Mr. Harper met them outside his apartment.   The officers questioned the pair separately.   Ms. Cheatham indicated that she had been hit by Mr. Harper and that she wanted Mr. Harper arrested, so Officer Dean Chatman decided to handcuff Mr. Harper and place him in a police cruiser while the incident was investigated.   Officer Chatman started to write a citation for assault against Mr. Harper, but his partner informed him that Ms. Cheatham had left the scene.   Unable to get a statement from Ms. Cheatham, Officer Chatman advised Mr. Harper that he was free to leave.

{¶3}    Mr. Harper believed that he was the wronged party and wanted the police officers to arrest Ms. Cheatham.   After being told by Officer Chatman that Ms. Cheatham could not be arrested because she was no longer at the scene, Mr. Harper chose to protest the police officer's inaction nonviolently by staging a "sit-in" in the police cruiser.   Despite repeated requests, Mr. Harper refused to get out of the cruiser.

{¶4}     The "sit-in" lasted for over an hour and a half.  Eventually, the frustrated police officers called the chief city prosecutor for guidance.  The city prosecutor advised them to arrest Mr. Harper for the assault.  Armed with this advice, Officer Chatman told Mr. Harper that he was going to be charged with assault, and that if he resisted in the slightest, he would be charged with resisting arrest.  What happened next is unclear.  According to Officer Chatman, the policy of the police department was to handcuff arrestees outside of the cruiser.  But Officer Chatman was unsure whether he had asked Mr. Harper to leave the car or had asked him to put his hands behind his back immediately.  Referring to the video from the cruiser camera, Officer Chatman stated, "The video will have to recall that.  I don't recall if I asked him to put his hands behind his back to handcuff him or to step out.  Either way, he didn't do either what I asked him to do."

{¶5}     Mr. Harper's recollection of what happened after he was told that he was under arrest for assault is different.  According to Mr. Harper, he was unsure why he was under arrest.  And rather than trying to resist arrest, he attempted "to accommodate the officers by responding to whatever they needed me to respond to.  When they asked me to put my hands behind my back, I did that."

{¶6}     After considering the testimony of the witnesses and watching the video, the court found that, based on what it had seen on the video, Mr. Harper had resisted arrest.  The court found him guilty of resisting arrest, sentenced him to six days' incarceration, and credited him with six days served.

II.

{¶7}     In his first assignment of error, Mr. Harper asserts that his conviction was supported by insufficient evidence and was against the manifest weight of the

3

evidence. Before considering this assignment, we must first address the absence from the appellate record of an exhibit relied upon by the court below.

{¶8} Because Mr. Harper's "sit-in" lasted for over an hour and a half, the video from the police cruiser was divided into three parts. Joint Exhibit 1 was the cruiser video. The pivotal volume—the one that showed the alleged offense—was volume 3, and it was this volume that the trial court apparently reviewed prior to making its finding of guilt. The record indicates that, at the conclusion of the trial, Joint Exhibit 1 was admitted into evidence by the court.

{¶9} On June 19, 2013, Mr. Harper's appellate counsel, who was not his trial counsel, filed a motion for an extension of time to file her brief with this court. Within that motion, which was served on the city, counsel explained that she was unable to complete the brief because volume 3 of Exhibit 1 was missing. Counsel explained that

the DVD marked as "Joint Exhibit 1" and contained in the evidence box for this case in the Court Reporter's Office is not the correct DVD—rather, it is Volume 1. Likewise, the DVD given to counsel by trial counsel is also not the correct DVD—it is Volume 2. Counsel is seeking the assistance of the City of Cincinnati Prosecutor's Office and the Cincinnati Police Department in locating a copy of Volume 3 for counsel's review.

{¶10} Appellate counsel's efforts to locate volume 3 were unavailing, prompting her to file a notice with this court that volume 3 was missing. Within her notice, appellate counsel stated that

[c]ounsel sought the assistance of the City of Cincinnati's Prosecutor's Office/Counsel for Appellee (Christopher Lui) to locate the correct volume of the cruiser camera video. Mr. Lui informed undersigned counsel that the trial attorney for the City of Cincinnati no longer is

4

employed by the City of Cincinnati Prosecutor's Office and that his files for this case are also missing. Counsel for Appellee further informed undersigned counsel for Appellant Harper that, to date, the City of Cincinnati Police Department has not been able to reproduce the video in question.

Mr. Harper's appellate brief, filed on August 1, 2013, again referenced the fact that volume 3 was missing from the appellate record.

{¶11} The state filed its brief on November 4, 2013. Within the brief, the assistant city prosecutor stated that "Defendant's claim that Joint Exhibit 1 is missing from the record is not correct and it is up to the Appellant to make [sure] the record has been corrected." Later in the brief, the prosecutor states that "[t]his issue [of the effect of the lost exhibit on Mr. Harper's appellate rights] is moot because Joint Exhibit 1 has been sent to Defendant-Appellant and it is up to the Defendant-Appellant to correct the record."

{¶12} During the argument before this court, however, it was revealed that no copy of volume 3 had been sent to Mr. Harper's appellate counsel, and that the original volume 3, which should have been left in the possession of the court reporter following the trial, was in the assistant city prosecutor's file. The assistant city prosecutor represented to this court that volume 3 had been in his file from the time he had been assigned the case in September 2013. It seems evident, then, that volume 3 had been in the possession of the city since the conclusion of the trial. The assistant city prosecutor acknowledged to this court that the statement in his brief that volume 3 had been sent to Mr. Harper's counsel had not been based on personal knowledge. The assistant city prosecutor also conceded that, despite the fact that volume 3 was in his possession, he

had not tried to supplement the appellate record because he was under the impression that it was Mr. Harper's counsel's burden to do so.

{¶13}   What is troubling is that as is evidenced in repeated filings in this court, the city knew that the DVD was missing, and that Mr. Harper's counsel was making every effort to make the DVD a part of the appellate record.  Yet the city did nothing.  The city attempts to hide behind App.R. 10(A) and argues that the burden was on the appellant to make sure the record was complete.  What the city fails to explain is how counsel could have supplemented the record with a DVD that was in the city prosecutor's possession all along.  Because the city did not supplement the record, our review is limited to the record as it stands before us.

III.

{¶14}   Turning to Mr. Harper's sufficiency claim, we must determine whether the city presented adequate evidence on each element of the offense.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  Mr. Harper was convicted of violating R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."  Officer Chatman stated that he believed that Mr. Harper had "clamped up" when he was told he was under arrest.  But Officer Chatman deferred to the video to show exactly what had occurred.  Because the video is not part of the record before us due to the conduct of the city prosecutor's office, we are unable to confirm that Mr. Harper "clamped up" or did anything else that would constitute resisting arrest.  As we unable to conclude that the city presented sufficient evidence of the offense, we sustain Mr. Harper's first assignment of error.

{¶15}   Our resolution of the first assignment of error is dispositive, so we need not consider Mr. Harper's second assignment of error.  The judgment of the trial court is reversed, and Mr. Harper is discharged from further prosecution.

Judgment reversed and appellant discharged.

**HENDON, P.J.,** and **HILDEBRANDT, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.