[Cite as *State v. Vanek-Peterson*, 2024-Ohio-1096.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JUDITH VANEK-PETERSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0021**

---

Criminal Appeal from the
Youngstown Municipal Court, Mahoning County, Ohio
Case No. 2022 TRD 0281

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Judges,
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Kathleen Thompson*, Youngstown City Prosecutor, for Plaintiff-Appellee and

*Atty. Donald K. Pond*, for Defendant-Appellant.

Dated: March 22, 2024

**HANNI, J.**

{¶1} Defendant-Appellant, Judith Vanek-Peterson, appeals from a Youngstown Municipal Court judgment convicting her of failing to stop her school bus after an accident. The court found her guilty in Case Number 22TRD0281 of violating R.C. 4511.36 with an improper turn, a minor misdemeanor, and failure to stop after an accident in violation of R.C. 4549.02, a first-degree misdemeanor. The court also found Appellant guilty in Case Number 22TRD0314 for violating R.C. 4511.76, regarding school bus regulations. She appeals only the conviction for failure to stop after an accident.

{¶2} The trial court sentenced Appellant on the failure to stop to a one-year license suspension, with credit from August 24, 2022, one-year of reporting probation, and 180 days in jail with 180 days suspended. The court stayed the sentence pending appeal. She also incurred fines in both cases.

{¶3} On appeal, Appellant contends that insufficient evidence supports her conviction and it is against the manifest weight of the evidence. For the following reasons, Appellant's assignments of error lack merit and we affirm her conviction.

{¶4} On February 24, 2022, Youngstown Police Officer Kevin Bokesch issued Appellant a citation for an improper turn in violation of R.C. 4511.36 and leaving the scene of an accident in violation of R.C. 4549.02. The citation indicated that Appellant was driving a school bus at the intersection of South Osborn near Melwood and made an improper turn and left the scene of an accident with a mail truck.

{¶5} At the bench trial on September 1, 2022, the parties stipulated that an accident occurred on February 24, 2022. Officer Bokesch testified that a mail truck was parked on the side of the road and Appellant struck the truck as she made a right-hand turn with her school bus onto Melwood. (Tr. at 28-30). He stated that he took the report of the accident, but did not speak to Appellant until she returned to the bus garage. (Tr. at 30). He testified that when he asked about the accident, she told him that she did not think that she hit anything, so she continued driving. (Tr. at 30).

{¶6} Kyle Bailey testified that he was sitting in his mail truck, which was parked on the side of the street, when he saw a school bus turn right and hit the back left end of his truck. (Tr. at 36). He stated that the crash lifted up his truck, tore half of the truck's

back bumper off, and destroyed the convex mirror on the back of the truck as it was completely rammed into the back door of the truck. (Tr. at 36). He further testified that there were dents in the back corner of the truck with yellow paint on them. (Tr. at 36).

{¶7} Mr. Bailey testified that he exited his truck to assess the damage and when he looked forward to see how the bus driver would react, he saw that she continued to drive to the stop sign on the next street. (Tr. at 36). He related that as he watched her turn right onto that street, he observed that the right side of the bus had a broken window. (Tr. at 36). He stated that he continued to stand in the road to see if she would return, but she did not. (Tr. at 37). He testified that he observed a little hesitation by the bus after the accident, but then it just proceeded ahead. (Tr. at 37).

{¶8} Jonathan Atherton testified that he was a technology coordinator for the Youngstown City Schools' transportation department. (Tr. at 42). He stated that he maintained DVRs and GPS devices in the busses and he pulled video from the internal camera of the bus that Appellant drove on the day of the accident. (Tr. at 43). Some of the DVD was played during his testimony. (Tr. at 46).

{¶9} The DVD is not in the appellate file and staff at Youngstown Municipal Court reported that they are unable to locate it. On January 18, 2024, this court's Magistrate issued an Order advising the parties of the missing video and mandating that they comply with App.R. 9(E) by supplementing the record with the DVD or filing a stipulation as to the missing DVD within 10 days of the Order. The parties filed a joint stipulation indicating that the DVD was unable to be used due to damage.

{¶10} In any event, Mr. Atherton testified that he decided which portion of the internal camera on the bus to record and the video showed Appellant driving to the corner with the mail truck visible, the sound of the window shattering, and the only student left on the bus yelling that a window had broken. (Tr. at 47). He testified that the student was still on board because her parents were absent at drop off and school policy is that students are taken to the bus garage until parents are called to pick them up. (Tr. at 54). He noted that this student was often taken to the garage to wait for her parents and she was yelling during the video. (Tr. at 53-55).

{¶11} Mr. Atherton testified on cross-examination that he did not view the entire video and did not know what happened after the taped portion of the video ended. (Tr.

at 50). He related that he was also in the office when Appellant called the garage from the bus to report the broken window. (Tr. at 51). He explained that when the window broke, Appellant should have immediately reported to the garage that a student was still on board and she should have stopped the bus so that the police department could be called to the scene and write an accident report. (Tr. at 55). Mr. Atherton testified that Appellant returned to the garage with the bus and she and the student boarded another bus until she was called back to the garage after the accident was discovered. (Tr. at 56).

{¶12} Ohio State Highway Patrol Officer Joel Hughes testified that he cited Appellant under R.C. 4511.76(C) for violating Ohio regulations concerning transportation of pupils on school buses. (Tr. at 63). He learned that Appellant was involved in a traffic crash and the regulation required the bus to be taken out of commission immediately until the bus was re-inspected and put back in service. (Tr. at 64).

{¶13} Officer Hughes testified that he observed the broken window and the scratches and scrapes on the side of the bus. (Tr. at 64). He spoke to Appellant, who told him that she did not realize that she struck the mail truck or that a bus window had broken. (Tr. at 64). He indicated that he reviewed the video and saw the bus strike the mail truck and heard the child say something about the window breaking. (Tr. at 65-66).

{¶14} On cross-examination, Officer Hughes stated that he did not view the entire video, but saw enough to cite Appellant under the Ohio school bus regulation as the video showed the bus strike the mail truck, which in itself required Appellant to stop, even if no damage occurred to the bus. (Tr. at 68).

{¶15} The defense called Timothy Hahn, the fleet foreman for Youngstown City Schools in charge of the buses. (Tr. at 75). He testified that Appellant called into the garage and reported that a bus window broke after she hit a pothole. (Tr. at 77). He told her to bring the bus back and he gave her another bus. (Tr. at 78). He testified that after the police came in later on to report the accident, he called her and told her to stop unloading students from her second route and return to base. (Tr. at 79).

{¶16} Appellant testified that she had been a bus driver for two months before the accident occurred. (Tr. at 88). She stated that she dropped off one of two remaining students at the corner of Osborn and Melwood and the other student remained on the

Case No. 23 MA 0021

bus because her parents were absent when she attempted to drop the student off at home.  (Tr. at 90).  Appellant radioed in for instructions on what to do with the student and was told to bring her back to the base.  (Tr. at 90).

**{¶17}** Appellant related that from the moment she left the student's home, the girl was screaming and crying and moved up behind Appellant on the bus.  (Tr. at 90).  Appellant explained that she is deaf in her left ear and while she was driving, she heard the girl screaming, the bus cooling fans whirling, and the CB radio with all of the bus drivers chattering on it.  (Tr. at 91-92).  She recalled dropping off the second to the last student, putting her bus back in drive, closing her doors, checking her mirrors, and releasing the parking brake to approach the right turn.  (Tr. at 93).

**{¶18}** Appellant testified that she saw the mail truck as she made the turn, although she did not know at the time that it was a mail truck.  (Tr. at 93-94).  When asked what was going through her mind as she made the turn, Appellant stated that it had just rained or snowed the day before and she did not want to go through people's yards and get stuck in the grass.  (Tr. at 94).  She continued making the turn and thought that she had hit the curb, so she looked in her mirrors and saw that no contact was made with the curb or the mail truck.  (Tr. at 94).  She then kept going to the next stop sign.  (Tr. at 94).  Appellant stated that the design of the bus impeded her ability to see certain things in the back of the bus.  (Tr. at 95).  She indicated that she checked the mirrors after hitting what she believed to be the curb, and she checked on the remaining student and saw nothing unusual.  (Tr. at 96).  A window on the bus had cracked after the accident, but Appellant stated that she could not see it.  (Tr. at 95).

**{¶19}** Appellant explained that as she was heading back to base with the remaining student, she hit a pothole and she and the girl jumped as they both heard the window of the bus shatter.  (Tr. at 97).  She related that she called her base and told them about the broken window and then returned to base as instructed.  (Tr. at 97).

**{¶20}** Appellant testified that after she picked up another bus and began picking up students for her second route, she was called on the radio and was told to return to base and not to drop any of the children in the bus off at home.  (Tr. at 99).  She did not know why she was summoned back and thought something happened to her husband or daughter.  (Tr. at 100).  A police officer was waiting with the fleet staff and told her that

she had been involved in an accident. (Tr. at 102). She testified that she started laughing and told him that she was not involved in an accident. (Tr. at 102). She stated that she told him that she just hit a pothole. (Tr. at 102). She testified that she was 53 years old, had been driving since she was 16, and she knew that whenever a person was involved in an accident, she was to stop and wait for officers. (Tr. at 103). She stated that had she been in an accident with the bus, she would have stopped. (Tr. at 103-104).

{¶21} On cross-examination, the DVD of the bus camera video was played for Appellant. She testified that the DVD showed the mail truck as she approached to make the right turn and a noise was heard as the bus hit the mail truck. (Tr. at 107-108). Appellant related that on the DVD, she stated, "Oh" or "Oh shoot," when the noise occurred. (Tr. at 108). Appellant testified that she had reacted to hitting the curb. (Tr. at 108). When asked if she reacted to the bump she felt, Appellant said yes. The prosecution then asks, "Okay. So you knew that you hit something?" (Tr. at 108). Appellant responded, "yes." (Tr. at 108). When asked if she heard what the girl on the bus said, Appellant indicated that she did not. (Tr. at 109). The following discussion then occurred on the record, although we do not have the benefit of the DVD playing as it was during this discussion:

> A: I - - she said I hit - - I thought she said curb. I did not hear her say bus. Or. . .
>
> Q: She repeated it three times. You asked her to repeat it, and she repeated it. And you reacted, did you not?
>
> A: I reacted to hitting the curb. When I looked up - - and you can see me looking up - - I did not see any contact with any vehicle.
>
> Q: But you acknowledged [sic] child telling you that you broke a window, correct?
>
> A: I acknowledged her talking. But I don't remember what she said in that moment, no. Because she had been screaming the entire trip.

Tr. at 109.

**{¶22}** Appellant reiterated on redirect examination that she did not know that she hit a vehicle. (Tr. at 112-113). She stated that she did not purposely leave the scene because it was the law not to do so and she did not know that she hit the mail truck. (Tr. at 113).

**{¶23}** On September 23, 2022, the court issued a judgment entry finding Appellant guilty on all counts. The court issued findings of fact and conclusions of law.

**{¶24}** On October 31, 2022, the trial court held a sentencing hearing and sentenced Appellant to a $50 fine in Case Number 22TRD0314 with court costs suspended. In Case Number 22TRD0281, the court issued Appellant a $50 fine on the improper right turn violation and suspended its court costs. The court issued Appellant a $150 fine with court costs suspended on the leaving the scene of an accident conviction, along with a 1-year license suspension with credit from August 24, 2022, 1 year of reporting probation with $100 in probation fees, and 180 days in jail, with 180 days suspended.

**{¶25}** Appellant filed this appeal asserting two assignments of error as to her conviction for leaving the scene of an accident. She was granted a stay of her sentence pending appeal.

**{¶26}** In her first assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED BY ENTERING A GUILTY VERDICT AGAINST JUDITH VANEK-PETERSON FOR THE CHARGE OF FAILURE TO STOP AFTER AN ACCIDENT, IN THE ABSENCE OF SUFFICIENT EVIDENCE, CONTRARY TO DUE PROCESS AND THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARITCLE I, SECTION 16 OF THE OHIO CONSTITUTION. (DOCKET, JANUARY 30, 2023).**

**{¶27}** Appellant focuses on the knowledge element for the offense of failing to stop after an accident under R.C. 4549.02(A)(1)(b). She explains that the statute requires that the operator of a motor vehicle on a public road "must have knowledge" of the accident before stopping and remaining at the scene until the operator gives her name and address, or the vehicle owner's name and the registration number of the vehicle. She

Case No. 23 MA 0021

cites caselaw and Ohio Jury Instructions providing that "knowledge" is determined by the facts and circumstances in evidence.

{¶28} Appellant cites R.C. 2901.22(B), which defines the culpable mental state of knowingly as:

> [a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶29} Appellant asserts that she was unaware of the accident and failed to act or make inquiry about the accident because there was a low probability that an accident existed. She states that she is deaf in one ear and excessive noise filled the bus from the screaming girl, the chattering over the bus CB, and the loud cooling fan.

{¶30} Appellant further asserts that it was reasonable for her to infer that she hit the curb and not the mail truck. She reasons she saw the mail truck, saw that the turn was not that tight on the road even with the location of the mail truck, and she believed that she hit the curb and noted nothing out of the ordinary when she looked in her mirrors. Appellant also contends that while the bus window cracked, it did not shatter upon impact with the mail truck. Rather, she asserts that the window shattered two blocks later when she hit a pothole with the bus. She thus thought that the pothole caused the window to shatter.

{¶31} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 7th Dist. Columbiana No. 12 CO 50, 2013-Ohio-5293, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

**{¶32}** In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.*, citing *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

**{¶33}** A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins, supra*, at 390, 678 N.E.2d 541 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

**{¶34}** In *City of Cleveland v. Norman*, 8th Dist. Cuyahoga No. 106742, 2019-Ohio-697, ¶ 14, the appellate court faced a similar situation. There, an Ohio State Highway Patrol Trooper was the only witness to testify at Norman's trial on a number of criminal charges stemming from a traffic stop. After a portion of the trooper's testimony, the State played a video of the trooper's dashcam showing the encounter with Norman. The trooper then responded to questions based on the video and the video was admitted into evidence.

**{¶35}** On appeal, Norman asserted that insufficient evidence existed to support his conviction for resisting arrest. Before addressing the assignment of error, the appellate court noted that the dashcam video was absent from its record and the trial court certified that it could not be located. The appellate court held:

> [i]t is the appellant's responsibility to provide the court with a record of the facts, testimony, and evidentiary matters that are necessary to support the appellant's assignments of error. *State v. Smith,* 8th Dist. Cuyahoga No. 94063, 2010-Ohio-3512, ¶ 11. Thus, in the absence of a complete record, an appellate court must presume regularity in the trial court's proceedings.

*Id.* We cannot presume regularity, however, where the record is incomplete due to the trial court's failure to secure the exhibits.

*Norman, supra*, at ¶ 14. The court distinguished its case from *State v. Harper*, 1st Dist. Hamilton No. C-130134, 2013-Ohio-5217. There, the court reversed Harper's conviction for resisting arrest because a dashcam video played at trial and admitted into evidence was absent from the appellate record. *Id.* The appellate court found that the city did not supplement the record with the video, even though it possessed the video, because it believed that it was the appellant's duty to supplement. *Id.* The *Harper* court found insufficient evidence for the conviction since the video was not in the record, the state trooper deferred to his dashcam video in his testimony, and the trial court relied on the video in finding Harper guilty of resisting arrest. *Id.* The court held that without the video, it could not determine whether Harper acted in the manner that the trooper testified was shown in the video*. Id.*

**{¶36}** In differentiating *Harper*, the *Norman* court held that the missing exhibits were not the only basis relied upon for the conviction. *Norman, supra*, at ¶ 17. The court indicated that the trooper in its case testified to and described the encounter with Norman prior to playing the video at trial. *Id.* The court concluded:

> [b]ecause the trial court could have considered [Trooper] Martens's testimony in reaching its verdict, and not relied only on the dashcam video and the LEADS report, we cannot conclude based solely upon the absence of the exhibits from the record that there was insufficient evidence to sustain Norman's conviction.

*Id.* While the court ultimately found insufficient evidence to sustain the conviction, its determination was based on the testimony at trial. *Id.*

**{¶37}** Similarly here, the trial court could have considered and relied on the testimony of Appellant and Mr. Bailey in finding that Appellant met the knowledge element of R.C. 4549.02(A)(1)(b), as defined in R.C. 2901.22(B). Appellant testified that she saw a vehicle on the side of the street as she made the right turn in the bus and she thought that she hit the curb, looked out of the mirrors, saw no contact, and kept going. (Tr. at 94). She stated that she had been driving a bus for two months and was deaf in her left

ear, and she did not hear her bus hit the mail truck due to noises from the bus engine, the bus CB, the bus fan, and the yelling of the remaining student on the bus. (Tr. at 105). However, Appellant testified that she felt the impact of the bus hitting something and she knew that she hit something. (Tr. at 108). Yet she did not stop.

**{¶38}** Further, Mr. Bailey testified that he saw Appellant make a right-hand turn and hit the back left end of his truck while he was seated in the truck. (Tr. at 36). He testified to extensive damage to his mail truck, including a halfway torn off back bumper and a large convex mirror on the back of the truck that was destroyed and jammed into the back of the truck. (Tr. at 39.) He further testified that the collision actually lifted him up in his mail truck. (Tr. at 36). He also indicated that he noticed a broken window on the right side of the bus as he watched the bus drive away and take another right turn. (Tr. at 36-37).

**{¶39}** From this testimony, and viewing the evidence in a light most favorable to the prosecution, we find that sufficient evidence was presented to find that Appellant knew that a high probability of an accident existed and she failed to make inquiry with a conscious purpose to avoid learning the fact. She felt an impact but did not stop and the extensive damage to the mail truck supports the trial court's decision.

**{¶40}** Accordingly, Appellant's first assignment of error lacks merit and is overruled. In her second assignment of error, Appellant asserts:

> **THE TRIAL COURT ERRED BY ENTERING A GUILTY VERDICT AGAINST JUDITH VANEK-PETERSON FOR THE CHARGE OF FAILURE TO STOP AFTER AN ACCIDENT. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO DUE PROCESS AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION. (JANUARY 30, 2023).**

**{¶41}** Appellant contends that the court lost its way by finding that she knowingly failed to stop after an accident. She asserts that the State did not meet its burden of

persuasion as to the knowledge element and we do not view the evidence in a light most favorable to the prosecution when considering manifest weight assertions.

**{¶42}** Appellant relies on the same reasons asserted for her sufficiency of the evidence assignment of error. She contends that she was unaware that she was involved in an accident with the mail truck and there was a low probability of the existence of an accident.

**{¶43}** Appellant's second assignment of error also lacks merit. In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.' " *Id.* (Emphasis sic). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶44}** Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *Id.* citing *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2d Dist.). If a conviction is against the manifest weight of the evidence, a new trial is to be ordered. *Thompkins, supra*, at 387, 678 N.E.2d 541.

**{¶45}** An appellate court may independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence. *State v. Jackson*, 7th Dist. Jefferson No. 09 JE 13, 2009-Ohio-6407, at ¶ 18. But we must give deference to the fact finder's determination of witnesses' credibility. *Id.* The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. Inc., v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶46}** As explained in conjunction with the sufficiency of the evidence, Mr. Bailey testified that he saw Appellant's school bus hit his mail truck and continue to drive away.

Case No. 23 MA 0021

(Tr. at 36). He testified that the collision lifted his truck up, tore the mail truck's back bumper halfway off, and smashed the back convex mirror into the back door of the mail truck. (Tr. at 36-37, 39). While Appellant testified that left ear deafness and bus noises prevented her from hearing any noise associated with hitting the mail truck, she testified that she felt impact from what she thought was hitting the curb, but she continued to drive.

**{¶47}** The court did not believe Appellant's testimony and found it evasive and nonsensical at times. The court chose to believe Mr. Bailey's testimony. The court could reasonably believe that the amount of damage sustained to the mail truck would cause a considerable enough impact for Appellant to believe that she hit the mail truck and should have stopped to investigate. The determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶48}** Accordingly, Appellant's second assignment of error lacks merit and is overruled.

**{¶49}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P.J., concurs.

Klatt, J., concurs.

———————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court, Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**